IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES McCLENDON,            )
                              )
        Plaintiff,            )
                              )
    v.                        )   No. 12 C 2021
                              )
ILLINOIS DEPARTMENT OF        )
TRANSPORTATION, *et al.*,     )
                              )
        Defendants.           )

MEMORANDUM OPINION AND ORDER

The Office of the Executive Inspector General for the Agencies of the Illinois Governor ("OEIG"), a third party to this litigation, has moved to quash Charles McClendon's subpoena for documents relating to the OEIG investigation that resulted in his termination by the Illinois Department of Transportation ("IDOT") and any OEIG reports relating to misconduct by two IDOT supervisors who participated in the decision to fire him. I deny OEIG's motion to quash for the reasons stated below.

I.

McClendon worked for IDOT as an Engineering Technician V or "yard supervisor" in the Bureau of Maintenance for Region 1 from 2000 to 2010. At some point during his employment, OEIG received a complaint alleging that McClendon had worked a secondary job without IDOT's authorization and submitted

1

fraudulent overtime hours.  On June 15, 2010, OEIG found reasonable cause to believe that these allegations were true and sent its summary report to IDOT for a response.

On September 14, 2010, IDOT terminated McClendon's employment.  Defendants Carmen Iacullo ("Iacullo") and James A. Stumpner ("Stumpner"), both of whom held supervisory positions at IDOT, participated in the decision to fire McClendon.

McClendon alleges that IDOT discriminated against him because of his race (Count I) and retaliated against him for complaining about racial discrimination (Count II).  McClendon has also sued Iacullo and Stumpner under 42 U.S.C. § 1981 for racial discrimination (Count IV) and retaliation (Count III).  McClendon also claims that Iacullo and Stumpner retaliated against him because of his political affiliation with the Republican Party and his attempts to organize a union (Count V).

IDOT contends that it fired McClendon for a legitimate, non-discriminatory reason--namely, OEIG's findings that he violated state ethics laws.  McClendon believes that IDOT's stated reason for his termination is pretextual because Iacullo and Stumpner allegedly triggered OEIG's investigation for discriminatory reasons. *See Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1194 (2011) (endorsing cat's paw theory of liability, which holds that "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to

cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable" (emphasis in original)).

In an effort to show that IDOT's reason for firing him was pretextual, McClendon has subpoenaed three categories of documents from OEIG:

1. Any and all records, interview reports, interview notes, investigation notes, investigation summaries, and investigation reports relied upon and/or regarding the investigation of [IDOT] employee, Charles McClendon, resulting in a final report dated June 15, 2010.

2. Any and all reports created by the [OEIG] relating to any actions by Carmen W. Iacullo during his employment at [IDOT].

3. Any and all reports created by the [OEIG] relating to any actions by James A. Stumpner during his employment at [IDOT].

Dkt. No. 67-1.

II.

OEIG has moved to quash McClendon's subpoena on the ground that the State Officials and Employees Ethics Act ("Illinois Ethics Act"), 5 ILCS § 430/1 *et seq.*, prohibits disclosure of the requested documents. OEIG also argues that any reports relating to Iacullo and Stumpner are not relevant to McClendon's claims.

A.

I start with McClendon's request for a complete, unredacted copy of OEIG's investigative file relating to his alleged

3

violations of state ethics laws.  OEIG tacitly concedes that the entire file is relevant to McClendon's claims because IDOT allegedly fired him based on OEIG's investigative findings. A redacted copy of OEIG's twelve-page report concerning McClendon's alleged ethics violations and IDOT's response has already been made public pursuant to statutory mandate.[1]  *See id.* at § 430/20-52.  OEIG argues that the following statutory provision bars it from disclosing any other documents from its investigative file for McClendon:

> Unless otherwise provided in this Act, all investigatory files and reports of the Office of an Executive Inspector General, other than monthly reports required under Section 20-85, are confidential, are exempt from disclosure under the Freedom of Information Act, and shall not be divulged to any person or agency, except as necessary (i) to a law enforcement authority, (ii) to the ultimate jurisdictional authority, (iii) to the Executive Ethics Commission, (iv) to another Inspector General appointed pursuant to this Act, or (v) to an Inspector General appointed or employed by a Regional Transit Board in accordance with Section 75-10.

*Id*. at § 430/20-95(d); *see also id*. at § 430/20-90(a) (providing that the identity of complainants and witnesses "shall be kept confidential and may not be disclosed without the consent of that individual").  A state employee who intentionally violates the latter provision "is subject to discipline or discharge." *Id*. at §430/50-5(f).

---

[1] *See* http://www2.illinois.gov/oeig/Documents/08-00249_McClendon_121610.pdf (last visited Aug. 19, 2014).

The state law confidentiality provisions referenced above do not apply in this case because McClendon's claims arise exclusively under federal law. "[T]he evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law[.]" *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004). "Only in diversity litigation do state evidentiary privileges apply directly[.]" *Dunn v. Wash. Cty. Hosp.*, 429 F.3d 689, 693 (7th Cir. 2005).

The Federal Rules of Evidence provide that "[federal] common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501. OEIG does not contend that the Constitution, a federal statute, or a rule promulgated by the Supreme Court prohibits the disclosure of its investigative files. Therefore, OEIG must demonstrate, as a matter of first impression, that a federal common law privilege protects its investigative files from disclosure.[2]

---

[2] Neither *Magalis v. Adams*, 879 F.Supp.2d 976, 985 (C.D. Ill. 2012) (holding that state employee who faxed copy of confidential OEIG report to Chicago Tribune violated Illinois Ethics Act) nor *Chaklos v. Stevens*, No. 06-4063-JPG, 2007 WL 2028199 (S.D. Ill. July 11, 2007) (denying Illinois State Police's motion to quash subpoena for documents relating to OEIG investigation initiated by plaintiffs) answers the question presented in this case.

5

Illinois law plays some role, although not a decisive one, in my analysis of whether to recognize a federal common law privilege protecting OEIG's investigative files:

> [Rule 501] does not mean...that federal courts should not consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law. A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy. And where a state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule.

*Mem. Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (internal quotations and citations omitted); *see also Jaffee v. Redmond*, 518 U.S. 1, 12-13 (1996) ("[T]he policy decisions of the States bear on the question whether federal courts should recognize a new [common law] privilege or amend the coverage of an existing one.").

When deciding whether to absorb a state privilege into federal common law, the Seventh Circuit has prescribed a balancing test: "The court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Mem. Hosp.*, 664 F.2d at 1061-61 (internal quotation omitted). In other

words, federal courts should not "create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *Univ. of Penn. v. EEOC*, 493 U.S. 182, 189 (1990) (quoting *Trammel v. U.S.*, 445 U.S. 40, 51 (1980)).

1.

On one side of this balancing test, McClendon has a federally protected interest in not suffering discrimination because of his race or political affiliations. "Few would deny that ferreting out this kind of invidious discrimination is a great, if not compelling, governmental interest." *Univ. of Penn.*, 493 U.S. at 193. In fact, the interest in non-discriminatory treatment has prevailed over an employer's and a state agency's interest in maintaining the confidentiality of its records. *See id.* at 189 (declining to recognize federal common law privilege protecting peer review materials that were relevant to charge that university denied plaintiff tenure because of her race and sex); *EEOC v. Ill. Dep't of Employment Security*, 995 F.3d 106, 108 (7th Cir. 1993) (declining to apply Illinois statute making unemployment compensation proceedings confidential, 820 ILCS § 405/1900, as a matter of federal common law to block EEOC administrative subpoena).

OEIG has not cited a single case where an interest in confidentiality outweighed an employee's interest in determining

whether his or her employer engaged in unlawful discrimination. *See Webster v. Doe*, 486 U.S. 592, 604 (1988) (noting that "Title VII claims attacking the hiring and promotion policies of the [Central Intelligence] Agency are routinely entertained in federal court" despite the fact that discovery in these cases involves some degree of "rummaging around" in the Agency's affairs).

2.

With McClendon's interest in non-discriminatory treatment weighing heavily on one side of the balance, OEIG argues that keeping its investigative files confidential "promote[s] the reporting of misconduct" and "protect[s] the integrity of investigations." Dkt. No. 67 at 3. OEIG fears that disclosing its files during litigation could subject "whistleblowers" to "reprisals and other negative consequences." *Id*. Complainants and witnesses should not be "punished," according to OEIG, "by the harassment of depositions or being subject to suit." Dkt. No. 77 at 2.

OEIG's concern about "reprisals" does not apply to Iacullo or Stumpner who, as Defendants, already have discovery obligations. As for OEIG's larger concern about the harassment of non-party witness, the Federal Rules of Civil Procedure allow courts to limit the frequency and extent of discovery in

appropriate circumstances.[3] The Illinois Ethics Act also protects whistleblowers from retaliation by state actors. *See* 5 ILCS § 430/15 *et seq.* In light of these protections, OEIG's concern about possible "reprisals" against non-party complainants and witnesses can be addressed on a case-by-case basis without quashing McClendon's subpoena in its entirety.

As for OEIG's contention that confidentiality promotes truthful and timely reporting of misconduct, the Seventh Circuit has expressed skepticism about the supposed connection between secrecy and candor:

> Illinois justifies its [statutory] privilege [protecting unemployment compensation proceedings] as a way to encourage truthful and complete disclosure to state officials; people who do not fear that evidence will fall into the hands of persons who may use it against them will be more forthcoming, the argument goes. This is far from clear; one could as readily say that people who know that third parties will not examine the evidence have less to fear from telling lies--for the truth is less likely to emerge.

*Ill. Dep't of Employment Sec.*, 995 F.2d at 108; *see also Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 838 (1978) (acknowledging that confidentiality of Virginia's judicial disciplinary proceedings may promote the reporting of misconduct, but finding that this interest was insufficient to

---

[3] *See* Fed. R. Civ. P. 26(c) (authorizing federal courts to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense"); R. 45(d) (establishing protections for persons subject to a subpoena).

9

justify criminal sanctions against newspaper that published truthful story about a pending inquiry).

At the very least, OEIG's assertion that confidentiality protects the integrity of its investigations and promotes the search for truth is open to debate.

3.

In the end, I conclude that McClendon's federally protected interest in non-discriminatory treatment outweighs OEIG's asserted interest in the confidentiality of its investigative file concerning McClendon's alleged ethical violations. Without access to OEIG's investigative file, McClendon will have no opportunity to demonstrate that IDOT's asserted reason for firing him was pretextual. OEIG acknowledges this reality in its reply brief. *See* Dkt. No. 77 at 7 ("[I]f IDOT's representation is true--that it fired [McClendon] based solely on OEIG's Final Report--that apparently would defeat [his] discrimination claims."). The fact that OEIG's asserted interest in confidentiality would basically defeat McClendon's claims is a compelling reason not to recognize a federal common law privilege protecting its investigative files. *See Mem. Hosp.*, 664 F.2d at 1062-63 (declining to recognize federal common law privilege where doing so would deprive plaintiff of information central to this federal claim); *cf. Green v. Silver Cross Hosp.*, 1985 WL 1463, at *3 (N.D. Ill. May 14, 1985)

(applying state statutorily privilege as a matter of federal common law where employer did not consider requested documents when deciding to terminate plaintiff's employment).

"To recognize [OEIG] proceedings as privileged, regardless of the purpose for which disclosure is sought, would in effect grant [complainants and witnesses] absolute immunity from prosecution for all statements made and actions taken in the context of such proceedings." *Id*. at 1063. I decline to recognize an evidentiary privilege that would be fatal to McClendon's efforts to vindicate his federally protected rights. OEIG's motion to quash McClendon's subpoena on the ground that the records he seeks are privileged is therefore denied.

B.

In addition to its privilege objections, OEIG argues that McClendon's request for any investigative reports concerning Iacullo and Stumpner is not reasonably calculated to uncover admissible evidence. I note, for emphasis, that McClendon's subpoena is limited to "reports" concerning Iacullo and Stumper as opposed to any underlying investigative files.

McClendon counters OEIG's relevance objection with evidence suggesting that OEIG is currently investigating Iacullo for his involvement in possible patronage hiring at IDOT. On April 22, 2014, Michael Shakman moved for the appointment of a monitor to investigate IDOT's hiring and reassignment practices between

2003 and 2012.  *See Shakman v. The Democratic Org. of Cook Cty.*, No. 69 C 2145 (N.D. Ill.) at Dkt. No. 3744, ¶¶ 14-22.  Shakman's motion alleges that IDOT's illegal practices stopped in early 2012 when OEIG opened an investigation.  *Id*. at ¶ 15.

About one week after Shakman moved for the appointment of a monitor, Iacullo resigned from IDOT effective April 30, 2014. *See* Dkt. No. 76 at Ex. E. (Chicago Sun Times story in which IDOT spokesperson confirmed that Iacullo was the subject of an internal investigation that has been referred to OEIG).  The head of IDOT also resigned on or around July 1, 2014 amid accusations of patronage hiring.

OEIG argues that there is no connection between Shakman's motion and Iacullo's resignation, on the one hand, and McClendon's claim that he was fired because of his political affiliations.  The connection is actually quite straightforward. McClendon alleges that he was fired, in part, for political reasons.  Iacullo and Stumpner admittedly played a role in IDOT's decision to fire McClendon.  To the extent OEIG finds that IDOT, Iacullo or Stumpner allowed political considerations to influence employment decisions, any OEIG reports documenting these findings are directly relevant to McClendon's claim that he was the victim of a politically motivated firing.  Indeed, OEIG has a statutory duty to disclose its investigative reports

whenever they lead to a state employee's suspension or termination.  5 ILCS § 430/20-50(a).

### III.

As an alternative to quashing McClendon's subpoena, OEIG asks me to enter a protective order with unspecified terms; conduct an *in camera* review of the documents McClendon seeks; weigh the relevance of individual documents against OEIG's interest in confidentiality; and permit OEIG to redact the names of complainants and witnesses.  I deny this request.

The Agreed Confidentiality Order entered in this case already limits McClendon's ability to disclose or disseminate confidential information.  *See* Dkt. No. 60 at ¶ 5.  OEIG has not identified a legal basis for imposing any further restrictions on McClendon's ability to discover and utilize relevant, non-privileged information.

### IV.

OEIG's motion to quash is DENIED for the reasons stated above.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 19, 2014